SEPT. TERM, 1838.

Gallaher & McCabe v. Hunter.

and that he looked to him for payment.

---

## GALLAHER & McCABE v. HUNTER.

One Gallaher died, leaving a tract of land, a widow and several children. The widow and five of the children, who were of age, sold the land to one McCabe, who thereupon took possession. One of the children (James) who was not of age, at the time of this sale, about four years after became of age and received from his elder brother, who had negotiated the above mentioned bargain, his portion of the purchase money, and expressed verbally his acquiescence in the sale; but about a year afterwards, executed a title bond for his interest in said land to one H., who conveyed shortly after to the complainant, Hunter. McCabe, shortly after this conveyance to H., took from James a conveyance. Held, that Hunter, the assignee of H. had no claim to the aid of a court of equity, as his title bond from James gave him notice of McCabe's possession, and should at least put him upon inquiry into the nature of McCabe's title. The equities of Hunter and McCabe being, at least, equal, the legal title of McCabe must prevail.

APPEAL from the circuit court of Washington county.

*Scott & Ziegler,* counsel for plaintiffs in error:

Several questions are presented: 1. Did not the sale, by George Gallaher to McCabe, of the interest of James Gallaher, with his knowledge and consent while under age, accompanied by his ratification and approval when of age, give McCabe a good title?

2. Could not McCabe, on the verbal ratification of the sale by James and his receipt of his pay, (McCabe being in possession,) have enforced a specific performance as against James? and, if so, was it not competent for him to take a deed for what he could have enforced in equity?

3. Was not the possession of McCabe notice to Haverstick and Hunter of his prior right, and did they not

purchase of James with both actual and constructive notice?

4. Was it not competent for McCabe to perfect his title by deed from James, in pursuance of his prior contract, even if he had known of the existence of the bond of James to Haverstick?

5. Had McCabe any notice, actual or constructive, of the transactions between Haverstick and James Gallaher or Hunter?

6. Had not Haverstick and Hunter both acted in bad faith; and can they, not having clean hands, ask a decree?

7. Has not McCabe acted in good faith, and who has the superior equity in the case?

*P. Cole,* counsel for defendant in errer:

The defendant below, McCabe and Gallaher, make a general assignment of error; but it appears to me there are but two points in his defence:

1. That he is a purchaser from George Gallaher, who, he alleges, sold the land of James when a minor; but James affirmed the sale after he came of age; yet the witnesses and his sale to Haverstick proved that he disaffirmed it.

2. That he, McCabe, bought the land in suit of James Gallaher himself, without notice.

TOMPKINS, Judge, delivered the opinion of the court.

Hunter commenced his suit in chancery against Gallaher, McCabe, and one Haverstick. Haverstick failing to answer, the bill as against him was taken as confessed, and the circuit court entered up a decree against Gallaher and McCabe, on the bill, answer, and evidence given in the case; and to reverse that decree this appeal is prosecuted.

The complainant states in his bill, that some time in the year 1825, one David Gallaher died possessed of a certain tract of land in said county of Washington, being intestate, and leaving a widow and several children; and that on or about the 21st day of February, in the year 1835, James Gallaher, the defendant, one of the heirs of the said David, by writing, under his hand and seal, acknowledged that he had sold to Jacob Haverstick all his interest in the said tract of land, which is described in said writing as the land on which said McCabe then lived; and that afterwards, (to wit, on the 6th July, 1835,) said Haverstick sold and transferred all the interest he had acquired in said land to said Hunter; and that after the sale by James Gallaher, as aforesaid, to said Haver-

stick, he had, on the 21st March, 1835, by his deed sold to said McCabe the same land sold by him, as aforesaid, to Haverstick. The bill further states, that at the time he purchased, and also before he had paid the consideration money, McCabe had notice of the sale by Gallaher to Haverstick. The answer of James Gallaher denies that he gave McCabe notice of the sale by him to Haverstick. The answer of McCabe denies that he had any notice of the sale by James Gallaher to Haverstick before he had purchased the land from James Gallaher.

Geo. Gallaher, a witness, states that in the year 1830, his mother and five of the children of his father, then deceased, which were of age, agreed to sell the land on which his father died; that McCabe became the purchaser; and that he, George, being then of lawful age, became agent to pay their dues to the children as they severally became of age. After the sale of the land by the widow and the children, then of competent age, to McCabe, in 1830, he states that James and John had arrived at years of maturity, and had received from him their pay for their interest in the land, and appeared satisfied. This testimony of George Gallaher was taken in July, 1837, and the bond of James to Haverstick was dated in February preceding, and the deed to McCabe in March, about four weeks later than the bond to Haverstick. From the testimony of Reyburn, another witness, it appears that James received from his brother George a mare in part pay for his interest in this land, in the spring of 1834; and George testifies that James was then of lawful age, and by receiving his pay and expressing his satisfaction at the sale, he may be said to have confirmed it verbally. The statute of fraud is not set up here, and indeed there is no person to set it up. James Gallaher does not contest the claim of McCabe, but is co-defendant, and is desirous to establish the claim of McCabe; and neither Haverstick nor Hunter (his assignee) can claim any favor in a court of equity. Five years before the sale by James to Haverstick, of his individual interest, George and the children then competent to convey, had joined with their mother in a sale to McCabe, and had received pay for the whole land; one year before the said sale to Haverstick, James had come of age, and received his pay from George. It does not appear that the deed from the widow and the children, then of lawful age, had been recorded, but the bond of James to Haverstick shows that Haverstick had notice of McCabe's occupancy of the land for such a length of time as ought to have put on foot an inquiry as

SEPT. TERM, 1838.

Gallaher & McCabe v. Hunter.

One Gallaher died, leaving a tract of land, a widow and several children. The widow and five of the children, who were of age, sold the land to one McCabe, who thereupon took possession. One of the children (James) who was not of age, at the time of this sale, about four years after became of age, and received from his elder brother, who had negotiated the above mentioned bargain, his portion of the purchase money, and expressed verbally his acquiescence in the sale; but about a year afterwards, executed a title bond for his interest in said land to one H., who conveyed shortly after to the complainant, Hunter. McCabe, shortly after this conveyance to H., took from James a conveyance. Held, that Hunter, the assignee

SEPT. TERM,
1838.

of H., had no claim to the aid of a court of equity, as his title bond from James gave him notice of Mc-Cabe's posses-son, and should at least put him upon inquiring in-to the nature of McCabe's title. The equities of Hunter and Mc-Cabe being, at least, equal, the legal title of Mc-Cabe must pre-vail.

to McCabe's claim. McCabe took a deed from James to secure his title to the land which, five years before, he had bought from the widow and children, then of age, and for which he had paid the purchase money, and for his interest in which James had, one year before, received his portion of the purchase money, and the sale of which he had verbally confirmed. McCabe recorded immediately the deed from James to himself, but the bond from James to Haverstick had not been recorded. Testimony was given to affect McCabe with notice of the sale by James to him. It does not seem to me to be material in this case; for even if McCabe were proved to have had information of the sale, yet Haverstick equally had notice of the sale of the whole tract to McCabe five years before.

The circuit court, then, in my opinion, committed error in decreeing the land to Hunter on the testimony there given. Its decree ought, then, in my opinion, to be reversed, and the complainant's bill dismissed; and the other Judges of this court concurring, its decree is reversed, and the bill dismissed.